

**Attorneys at Law**

216 Lakeville Road
Great Neck, New York 11020
T 516.437.3400
F 516.334.3000

500 Village Square Crossing, Suite 101
Palm Beach Gardens, Florida 33410
T 561.899.9999
F 561.584.6434

April 6, 2026

Hon. Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re: Smith et al. v. Giuliani, No. 24-mc-351 (ER)

Dear Judge Ramos:

Defendant Rudolph W. Giuliani ("Defendant") respectfully submits this response to Plaintiffs' pre-motion letter dated April 3, 2026 (Dkt. 36).

Plaintiffs seek contempt sanctions. This dispute, however, is not about defiance of a court order. It concerns who must bear the threshold third-party vendor costs necessary to access a narrowed set of legacy electronically stored information ("ESI") so that counsel can review it for responsiveness and privilege prior to production. That is a Rule 45 cost-allocation issue—not contempt.

Defendant does not seek to relitigate the Court's prior service ruling, which he respectfully preserves. For present purposes, however, the relevant point is narrower: undersigned counsel was not retained until approximately July 28, 2025 and, once retained, did not ignore the subpoena or the Court's Order. To the contrary, counsel promptly engaged, served responses, investigated potential sources of responsive materials, and conferred extensively with Plaintiffs' counsel to identify a practical path to production.

The record forecloses any finding of contempt. On July 28, 2025, Defendant served written responses and objections. On August 16, 2025, Defendant served amended responses with a verification confirming a diligent search. Those responses explained, among other things, that (i) certain materials had been seized by the FBI in April 2021 and not returned; (ii) other materials may reside with former counsel or service providers; and (iii) certain legacy email and phone data were not readily accessible.

Thereafter, counsel engaged in extensive meet-and-confer efforts with Plaintiffs' counsel, including communications on more than twenty occasions, including July 28, July 31, August 7, August 13, August 14, August 16, August 18, August 27, September 2, September 18, September 25, October 6, October 17, October 22, November 6, November 7, and November 10, 2025, and January 9, January 12, January 20, January 27, February 17, February 23, March 6, March 10, and March 17, 2026. These sustained efforts—which included identifying potential data sources, coordinating with former counsel, and exploring methods to locate and produce

responsive materials—are irreconcilable with any claim of deliberate noncompliance.

Those efforts led to the identification of potential repositories of responsive materials, including Defendant's former counsel, Davidoff Hutcher & Citron LLP, and Trustpoint One, the third-party e-discovery vendor that maintained data associated with prior productions. Counsel for both sides conferred with Trustpoint regarding approximately six terabytes of data, including approximately 20,000 pages of documents, believed to include materials previously produced on Defendant's behalf to the House Select Committee.

That is the actual dispute. Defendant is not refusing to produce documents, nor is he seeking to shift ordinary review costs. Rather, before any review can occur, a vendor must perform technical work necessary to restore and render the data accessible. Only then can counsel conduct privilege review and produce responsive materials.

Rule 45 squarely addresses this situation. It requires the issuing party to avoid imposing undue burden or expense on a subpoenaed party and mandates that courts protect non-parties from significant expense resulting from compliance. Fed. R. Civ. P. 45(d)(1), (d)(2)(B)(ii). It further provides that ESI need not be produced from sources that are not reasonably accessible due to undue burden or cost, and permits courts to impose conditions—including cost-shifting— where production is ordered. Fed. R. Civ. P. 45(e)(1)(D).

Courts in this District routinely apply these principles by conditioning non-party production on payment of vendor costs necessary to access and produce ESI. See, e.g., *In re Subpoena to Loeb & Loeb LLP*, No. 19-mc-241 (PAE), 2019 U.S. Dist. Lexis 97896, at *1 (S.D.N.Y. June 11, 2019)[1]; *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 311 (S.D.N.Y. 2003)[2].

Even accepting Plaintiffs' account, the parties' dispute amounts to an impasse over cost allocation. That is a Rule 45 discovery dispute. Plaintiffs cite no authority converting such a dispute into contempt. A non-party's inability or refusal to absorb substantial third-party technical costs does not constitute disobedience of a court order.

The distinction is critical: Trustpoint's work is not attorney review time; it is threshold technical work required to make legacy ESI accessible at all. Defendant does not seek to shift legal review costs. Defendant seeks only that Plaintiffs bear the reasonable vendor costs necessary to restore, host, and export a narrowed set of materials previously produced to the House Select Committee. Defendant remains willing to cooperate on reasonable protocols, including the use of Plaintiffs' preferred vendor, subject to appropriate protections for privilege and data integrity.

---

[1] Judge Engelmayer found that the requested documents were relevant to the adversary proceeding but production would impose a substantial burden on non-party Loeb. To balance these factors, the court shifted the costs and substantial attorney fees for production to the party seeking the production. (In re Loeb & Loeb LLP, 2019 US Dist LEXIS 97896, at 1 (S.D.N.Y. June 11, 2019)).

[2] Cost-shifting of discovery costs should be considered only when electronic discovery imposes an "undue burden or expense" on the responding party. The burden or expense of discovery is, in turn, "undue" when it outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Contempt is reserved for clear and unexcused violation of a clear order. This record reflects the opposite—consistent engagement, diligence, and good-faith efforts to comply. On these facts, contempt is not appropriate.

Defendant respectfully requests that the Court deny Plaintiffs' request for leave to move for contempt sanctions and instead order that any production from the Trustpoint data be conditioned on Plaintiffs' payment of the reasonable vendor costs necessary to restore, host, and make accessible the narrowed production set paid directly to Trustpoint. Upon such payment, Defendant and Defendant's counsel, will at Defendant's expense, promptly review and produce all non-privileged relevant responsive documents to Plaintiffs.

Thank you very much.

Respectfully submitted,

Gary Rosen[3]

cc:    Babak Ghafarzade, Esq.
       Selendy Gay PLLC

---

[3] Undersigned counsel discloses, out of an abundance of caution, that in or about 1996 he served as an intern for Judge Ramos when Judge Ramos was an Assistant United States Attorney for the Eastern District of New York in Garden City, New York.